RECEIVED

SEP 10 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ROBIN LUCAS, et al.,
    Plaintiffs,

RHONDA FLEMING,
    Putative-Intervenor,

v.                      No. C96-2905-TEH

O. IVAN WHITE, et al.,
    Defendants.

## PUTATIVE-INTERVENOR'S MOTION TO INTEREVENE AND ENFORCE THE SETTLEMENT

The Putative-Intervenor, Rhodna Fleming, pro se, moves the Court pursuant to Federal Rules of Civil Procedure, Rule 71, to allow her to intervene in this case and enforce the nationwide settlement agreement made with the Bureau of Prisons, where there is a pattern of serious sexual assaults, sexual harassment, and the denial of appropriate care for inmate victims, which violate the settlement agreement. In support, the Interventor presents the following:

### RELEVANT CASE BACKGROUND

The original Plaintiffs were federal female inmates who filed a complaint alleging the Defendants were housing them in segregation (SHU), with male inmates and they were being sexually harassed by Prison guards and male inmates. After filing the complaint, the Plaintiffs were raped and beaten, by male inmates with the assistance of the prison officials, in retaliation for filing their complaint  The Court may reference its opinion in Lucas v. White, 63 F. Supp. 2d 1046 (N.D. Cal. 1999) for a full case history.

A settlement was made between the parties which included monetary compensation and nationwide changes to protect federal female inmates from sexual harassment and sexual assaults. The nationwide changes in the settlement require the Defendants to: 1) reduce the risk of female inmates being sexually assaulted or harassed by correctional staff and male prisoners; 2) provide appropriate programming, counseling, and services to female prisoners who are victims of sexual assaults; 3) provide training to prevent sexual assaults; 4) provide medical and psychology services for victims of sexual assaults; and 5) protection of victim confidentiality and monitoring of reforms. Lucas at 1051. The case was closed after a settlement on attorney fees.

### VIOLATIONS OF THE SETTLEMENT AGREEMENT

The Defendants are not in good faith complying with the settlement agreement. The Intervenor's own personal experiences and knowledge of countless female inmate victims of sexual abuse, will prove that the Defendants continuously fail to abide by the settlement and are in fact

-1-

sexually abusing and/or punishing female inmates who report credible instances of sexual assaults, harassment, and non-consensual affairs with correctional staff. The policies are on paper, but not in practice.

The Defendants have not reduced the risk of sexual harassment and assaults. Instead, the Defendants have instituted regulations which have increased occurences, by allowing male to female (MTF) transgender inmates who have not had sex reassignment surgery to be housed with hetero-sexual federal female inmates. Many of these MTF inmates openly state they are "female lesbians," and act on their sexual desires for female inmates.

In reverse, the female to male (FTM) inmates are given testostrone which make them stronger and increases their sex drive. All FTM and MTF transgender inmates openly exhibit and act on their sexual desires for female heterosexual inmates.

The Defendants routinely house heterosexual female inmates in locked and unlocked cells with MTF and FTM transgender inmates, which clearly violates right to privacy and religious liberty concerns for female inmates.

The second violation of the settlement agreement is the sexual abuses of female inmates by correctional staff, for sexual gratification or to humilate or punish and the lack of mental health care or services for the victims of the Defendants abuses. The female victim is mistreated for the duration of her incarceration after reporting substantiated cases of sexual assaults and harassment.

The training, if any, to prevent sexual assaults has not been effective. There is an increase in sexual assaults, harassment, and forced sexual relationships, since the settlement agreement.

Protection of the victim and confindentiality is non-existent. Filing a grievance entails submitting it to a "unit team" who routinely report what is in the grievances to their coworkers and the abusers. The female inmate is then harassed, intimidated, left in segregation for 6 months to 18 months, transferred to less desirable prisons, where further retaliation awaits her.

Statistical evidence and a review of individual cases, such as the Intervenor's, will prove that the Defendants have violated the set-tlement agreement.

### DEFENDANT'S SEXUAL ABUSES AGAINST THE INTERVENOR AND OTHER FEDERAL FEMALE INMATES

The Intervenor is serving a 30 year sentence for charges related to Medicare fraud. See, United States v. Arthur, 432 Fed. Appx. 414 (5th Cir. 2011). The Intervenor has been incarcerated over 10 years and has served her prison sentence at FDC Houston, FMC Carswell, FCI Tallahassee, FCI Waseca, FPC Bryan, FTC Oklahoma, and SFF-Hazelton, where she is currently in custody, the victim of a brutal sexual assault by correctional employees on June 6, 2018.

At every federal facility listed, the Intervenor hs been a victim of sexual abuse/harassment or witnessed the victimization of other female inmates.

The Intervenor's first major incident with sexual assault was in August 2015, at FCI Waseca, when she refused a medical exam. A Lt. Riehm came to the SHU cell with a use of force team, who held the Intervenor while all of her clothing was stripped from her body. The team included male officers. When the Intervenor was taken to the nurse, the nurse stated, "I told you that if she refused medical treatment I cannot touch her." The Intervenor had been sexually violated, stripped naked by male officers, when the supervisor had been told inmates have a right to refuse medical exams. No action, to the Intervenor's knowledge was taken against the employees, although the Intervenor was clearly a victim of sexually assaultive conduct by employees.

In September 2017, the Intervenor was in custody at FMC Carswell, held in the SHU, in protective custody because she filed a lawsuit regarding the housing of biological male inmates, in federal prison with her and other female inmates. See, Fleming v. United States, No. 7:17-cv-0009, (N.D. Tex. 2017), Honorable Judge Reed O'Connor presiding.The Intervenor was on a 40 day hunger strike when the prison doctor decided to place the Intervenor on the Mental Health-3 unit at the prison. The unit is for suicidal and severely mentally ill female inmates.

The Intervenor was given a one piece jumpsuit with no underwear. Anytime the Intervenor had to use the toilet, she had to completely undress, causing her to sit on the toilet naked.

Only male officers were assigned to this unit, 24 hours a day. These officers sat at a desk watching the video cameras images from cameras in each cell in this unit. From the Intervenor's cell, she could see video of numerous female inmates, naked in their cells. At this time she realized that there was a camera in her cell and these same officers had been watching her everytime she took off her clothing. The video screen was visible to anyone who walked into this unit, male or female. Whomever entered, inmate or BOP employee, male or female, could easily view naked, mentally ill female inmates, who probably were unaware they were being violated or had no way to stop it.

At SFF-Hazelton, in June 2018, the Intervenor reported sexual harassment to a federal magistrate judge, James E. Seibert, during a habeas case in Fleming v. SFF-Warden of Hazelton, No. 5:18-cv-43,(N.D. WV 2018), which raised claims regarding retaliatory transfer for litigating on sexual abuses and the transgender issue.

On June 6, 2018, the Intervenor was placed in the SHU, allegedly as a PREA victim. A medical exam was offered and in accordance with BOP Program Statement 6013.04 and PREA Section 115.82, the Intervenor refused the medical exam and told the BOP employees she did not wish to participate in a fake PREA investigation.

The warden, captain, prison nurse, and others participatedin the sexual assault of the Intervenor for 14 hours of torture and beating of the Intervenor, most of it on video.

Why? How? Well, the prison officials allege that the Intervenor had no right to refuse medical treatment or to participate in their investigation. The BOP employees held the Intervenor down, stripped all of her clothing off, pried her legs apart, and probed her vagina and anus. The Intervenor was then hogtied for 14 hours, kicked, and thrown around the cell, while being told, "this is for telling the judge" or this is for running to the law library." When the Intervenor told the BOP employees she was in pain, the restraints were cutting off her circulation, the lieutenant responded, more than once, "You are suppose to be in pain. Stay out of the law library."

The Intervenor has been held in the SHU from June 6, 2018 to the present. She has been denied all medical care unless she submits to the nurse that sexually assaulted her, Nurse Sines. The Intervenor has been denied access to victim advocates for emotional support. There is daily retaliation for requesting access to the law library, denial of all privileges and personal property. The BOP employees allege this matter is under investigation, but violate their own "no-contact" rules allowing all of the employees involved in the sexual assault to continue to berate and attack the Intervenor for contacting the Office of Internal Affairs and the courts.

The Intervenor is been sexually assaulted, tortured, and kept in lockdown for reporting the Defendants sexual abuses of female inmates.

### ARGUMENTS & AUTHORITIES IN SUPPORT OF THE INTERVENTION & ENFORCEMENT OF THE SETTLEMENT

Rule 71 allows a nonparty to a settlement to intervene to enforce the settlement if they are an intended befeficiary or 3rd party beneficiary. See, Hook v. Arizona, 972 F.2d 1012 (9th Cir. 1992)(holding intended beneficiaries have standing to sue to enforce settlement agreements); Berger v. Heckler, 771 F.2d 1556 (2d Cir. 1985)(holding non-parties could invoke Rule 71 to enforce provisions of the settlement).

The Intervenor, as a federal female inmate, is obviously an intended beneficiary of the settlement agreement. The original Plaintiffs sought to protect present and future federal female inmates from sexual assaults and harassment, as described above.

### TRANSGENDER GUIDELINES VIOLATE SETTLEMENT AGREEMENT

First, the DOJ-BOP has to decide if the agency truly acknowledges an inmate's right to identify as a sex opposite of the biological fact of their genitalia. If, the Defendants do not acknowledge this self-identification of gender, all biological MTF transgender inmates need to be immediately removed from the federal female prisons. If, the Defendants do acknowledge MTF and FTM transgender inmates rights, then FTM transgender inmates need to be removed from the federal female prisons.

The Intervenor's claim is simple: somebody has to go. Heterosexual, federal, female inmates, Christian, Jewish, and Muslims, cannot continue to be forced to shower with men, may they be MTF or FTM. It is sex discrimination to house all transgender inmates with the Intervenor, in non-coed prisons.

-4-

If the prisons are coed, well then there will be no claim, but as it stands today, federal prison is not coed on paper, but in reality it is.

The Intervenor is not asking the Court to decide the transgender issue, per se. She is asking for the settlement agreement to be enforced, which included no housing of female inmates with male inmates. The Intervenor does not want to share housing, and intimate facilities with male inmates. The Defendants need to explain their position on the issue to the Court and then let the Court decide how to enforce the settlement agreement in light of the Defendants housing male inmates with the Intervenor.

As far as the Intervenor is concerned, inamtes can identify as a unicorn and she does not care. The issue is being housed with men. It violates the settlement agreement and she is being attacked and harassed by both groups, MTF and FTM, as are many other women at prisons nationwide. No one polled regular old heterosexual women to ask how they would feel about being in a locked cell with men. This is far worse then what the original Plaintiffs endured, because the conduct is daily and continuous.

The Court may consider the Norsworthy v. Beard case, 2015 U.S. App. LEXIS 17447 (9th Cir. Cal., Oct. 5, 2015) which dealt with a male to female transgender inmate that wanted the state to pay for reassignment surgery and to be transferred to a female prison. Please see, Norsworthy, 87 F. Supp. 3d 1164 (ND Cal. 2015). The California Attorney General fought against this claim. The California prison officials stated that they had concerns that "Norsworthy might herself victimize female inmates." It is going on in federal prisons...although no one is talking about it in the "me too" movement.

INCREASED SEXUAL ASSAULTS/HARASSMENT BY CORRECTIONAL OFFICERS AND THE DENIAL OF CARE FOR VICTIMS

At every federal female prison, male and female correctional staff are being prosecuted for having sex with female inmates. It is out of control. This is one aspect of sexual abuses.

The use of sexual assaults to humilate, degrade, and punish inmates is common. Please note in a span of 3 years, the Intervenor was sexually assaulted twice. There are numerous other cases.

When inmates try to file grievances, there is staff intimidation or pretending they lost the grievance.

The settlement agreement affecting every federal prison is on paper but not in practice. The Intervenor has filed grievances for a victim advocate pursuant to Program Statement 5324.12, Section 115.53(a) and has never received this emotional support.

There has not been a reduction of risk to female inmates being sexually assaulted and harassed. In 2006, at FCI Tallahassee, there was a shoot out, where one U.S. Marshal was killed when they went in to arrest officers for running a prostitution ring on the female inmates.

-5-

There is no training on prevention of sexual assaults. If the warden and captain do not recognize a inmate right to refuse medical treatment and conduct a use of force where they sexually violate an inmate, how can the regular correctional officers believe the "training" is to be followed?

Last, there is no protection or confidentiality for inmate victims of sex abuse. The BOP employees intentionally spread the facts of victims when the arrive from other prisons.

STATUS OF THE INTERVENOR

The Intervenor is in no position to enforce the settlement agreement without the assistance of the law firm that obtained the agreement. The Intervenor is in poor physical and emotional condition, having been in segregation for over 90 days, verbally and physically abused daily, and not knowing when it will end.

Basically, the prison officials are angry that the Intervenor has raised issues that prove they abuse women, regularly. They use female inmates as sex slaves. If free women are being sexually assaulted and harassed on their jobs, can the Court imagine what is going on in federal prison where there is no monitoring?

The Intervenor needs care for herself and for many other inmates that have been abused by the Defendants.

PRAYER FOR RELIEF

The Intervenor prays the Court will allow her to intervene to obtain enforcement of the settlement agreement, appoint the law firm of Rosen, Bien, Galvan, Grunfeld, LLP as counsel, and any other relief the Court deems necessary.

Respectfully Submitted,

Rhonda Fleming, Intervenor
September 5, 2018

#20446-009
Secure Female Facility-Hazelton
PO Box 3000
Bruceton Mills, WV 26525

CERTIFICATE OF SERVICE

A copy of this Motion is served on the Defendants and other Parties by the electronic filing by the Clerk.

Rhonda Fleming

-6-

September 5, 2018

RE: Lucas v. White, No. C96-2905-TEH
    Enforcement of the Settlement

Dear Clerk:

    This case is over 20 years old, but some of the same things are going on in federal prison.

    The original Plaintiffs were represented by Rosen, Bien, Galvan, & Grunfeld, LLP in San Francisco. Mr. Michael W. Bien and Ms. Gay C. Grunfeld may need to be contacted by email. I am unable to email them at this time.

    Please provide me with a copy of the docket after this Motion is filed. I would like to order certain documents filed in the case. Please inform me of the cost per page of non-certified copies.

                                           Thank You,

                                           Rhonda Fleming